**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

RABBI AVIGDOR SLATUS, RITA SLATUS,
YAAKOV SLATUS, SHLOMO SLATUS,

        Plaintiffs,

        v.

DEAN FLAKE; WELLS FARGO BANK,
NATIONAL ASSOCIATION (INC.); and
TRUIST BANK,

        Defendants.

CIVIL ACTION NO.: 4:25-cv-232

**O R D E R**

For the below reasons, the Court **GRANTS** Plaintiffs' Motion to Remand.  (Doc. 13.)

Plaintiffs filed this action in the State Court of Chatham County against Defendants Dean Flake, Truist Bank ("Truist"), and Wells Fargo Bank National Association, Inc. ("Wells Fargo"), on September 12, 2025.  (Doc. 1-1.)  Truist removed the case to this Court based on diversity of citizenship.  (Doc. 1.)[1]  Truist acknowledged that Plaintiffs and Flake are Georgia residents.  (Id. at p. 5.)  But Truist argued that the Court could disregard Flake's citizenship because Plaintiffs had only named Flake as a defendant to defeat this Court's diversity jurisdiction.  (Id. at pp. 5–15)

---

[1] Truist stated that Wells Fargo consented to removal and that Flake's consent was unnecessary because he had been fraudulently joined.  (Doc. 1, pp. 5—6.)  Truist also asserted that Flake had not been served with the Complaint, (id. at p. 6 n.3), and it appears Plaintiffs have still not served Flake.  That said, after some initial dispute, the parties agree that whether Plaintiffs have served Flake does not affect whether the Court has subject matter jurisdiction.  (See doc. 1, p. 6 n. 3; doc. 13, pp. 6–8; doc. 20, p. 4 n.1.)

Plaintiffs moved to remand, (doc. 13), and Truist filed a brief in opposition to that Motion, (doc. 20), which Wells Fargo joined, (doc. 23).

A Georgia court might find that Plaintiffs state a claim against Flake for civil conspiracy to defraud.  Thus, Truist has failed to show that Plaintiffs fraudulently joined Flake.  As a result, this case falls outside the Court's subject matter jurisdiction and must be remanded.

## BACKGROUND[2]

This lawsuit arises out of loans that Plaintiffs made to Master Lending Group, LLC ("MLG").  (Doc, 1-1, pp. 2.)  "In exchange for their loans, Plaintiffs were to receive ten percent interest on the principal balance of each of their loans plus a full return of the principal loaned on demand."  (Id. at p. 3.)  MLG was organized and operated by Gregory Hirsch, who is now deceased.  (Id. at pp. 2—3.)  MLG "was a [P]onzi scheme run by Gregory Hirsch, and was perpetuated through a series of misrepresentations made by Gregory Hirsch, including but not

---

[2] The Court takes the following pertinent facts from Plaintiffs' Complaint, (doc. 1-1), and Amended Complaint, (doc. 10).  Ordinarily, an amended complaint supersedes an original complaint and renders the original complaint a "legal nullity."  Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).  But Plaintiffs intended to only supplement their Complaint through the Amended Complaint, and they "incorporate[d] . . . their initial Complaint as if fully set forth [t]herein."  (Doc. 10, p. 1.)  In federal court, the practice of incorporating by reference an entire prior pleading is disfavored if not disallowed.  See Gross v. UPS, No. 23-10808, 2024 WL 1299107, at *3 (11th Cir. Mar. 27, 2024) (incorporating prior complaints whole cloth constituted impermissible shotgun pleading) (citing Cook v. Randolph County, Ga., 573 F.3d 1143, 1151 (11th Cir. 2009)).  Nonetheless, as explained below, when ruling on a motion to remand for fraudulent joinder, the Court must review Plaintiffs' claims deferentially and follow state pleading standards.  Thus, the Court will consider the allegations in both pleadings when ruling on Plaintiffs' Motion.  The Court also considers the Amended Complaint even though it was filed after removal, because, under recent Supreme Court precedent, the Court must determine whether it has jurisdiction over this matter based on the currently operative pleadings rather than the pleadings that had been filed at removal.  See Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 30 (2025) ("When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says.").  At any rate, the Court's jurisdictional finding would remain the same whether considering Plaintiffs' original Complaint, (doc. 1-1), their Amended Complaint, (doc. 10), or both. For ease of reference, the Court will refer to the Complaint and Amended Complaint collectively as "the Complaints."

limited to how Plaintiffs' monies were being used."[3]  (Id. at p. 3.)  Defendant Flake was Hirsch's employee, and he assisted Hirsch in the operation of MLG including cutting monthly checks to MLG's investors.  (Doc. 10, p. 2.)  Flake "thought Master Lending Group's transaction history gave the appearance of a Ponzi scheme, yet he conspired to and did aid in the continuation of the fraudulent scheme in preparing interest checks actually sent to the lenders, including Plaintiff." (Doc. 1-1, p. 5.)  Plaintiffs received monthly payments from MLG until May 2023, and MLG filed for Bankruptcy in July 2023.  (Id. at p. 3.)

Flake "utilized his position working for Gregory Hirsch to create checks payable to lenders, such as Plaintiffs, and fraudulently cause such checks to be deposited into his personal account." (Id. at p. 5)  In other words, in addition to the checks that were delivered to MLG's lenders, Flake wrote additional checks made out to lenders but he "never intended lenders, such as Plaintiffs, to have an interest in them.  Instead, Flake would present these checks to Wells Fargo, whom with [sic] he had a personal checking account, for payment to him to be deposited into his personal checking account."  (Doc. 10, p. 2.)  "Wells Fargo accepted Flake's deposits and presented them to Truist, known as Suntrust [sic] at the time, for payment from the lenders' pool of money in Master Lending Group's account with Truist."  (Doc. 1-1, p. 3.)  Flake began this practice in

---

[3] As the United State Court of Appeals for the Eleventh Circuit explained,

> "The term 'Ponzi scheme' is derived from Charles Ponzi, a famous Boston swindler.  With a capital of $150, Ponzi began to borrow money on his own promissory notes at a 50% rate of interest payable in 90 days.  Ponzi collected nearly $10 million in 8 months beginning in 1919, using the funds of new investors to pay off those whose notes had come due." United States v. Masten, 170 F.3d 790, 797, n. 9 (7th Cir.1999) (quotations and citations omitted).  "Generically, a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors."  In re Bonham, 229 F.3d 750, 759, n. 1 (9th Cir. 2000). See also Cunningham v. Brown, 265 U.S. 1, 44 (1924).

United States v. Silvestri, 409 F.3d 1311, 1317 (11th Cir. 2005).

September 2016, and over the next three years, he stole money 251 times totaling $1.6 million dollars. (Id.) Flake pleaded guilty to criminal charges of "knowingly carrying out a scheme to defraud a financial institution and to get money, assets, or other property from a financial institution, by using false or fraudulent pretenses, representations, or promises about a material fact." (Id. at p. 6.)

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted). As such, a defendant may only remove an action from state court to federal court if the federal court possesses original jurisdiction over the subject matter. See 28 U.S.C. § 1441(a). A federal district court has original jurisdiction over two types of civil actions: (1) those arising under federal law ("federal question jurisdiction"); and (2) those involving diversity of citizenship. See 28 U.S.C. §§ 1331, 1332. In this circuit, "there is a presumption *against* the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (emphasis added), *abrogated on other grounds by* Overlook Gardens Props., LLC v. ORIX USA, L.P., 927 F.3d 1194, 1202 (11th Cir. 2019).

When a case has been removed on diversity grounds, the Court must remand if there is not complete diversity of citizenship between the parties or where one of the named defendants is a citizen of the state in which the suit is filed. 28 U.S.C. § 1441(b). Even so, courts may retain jurisdiction and "ignore the presence of [a] non-diverse defendant" when the plaintiff fraudulently

joined that defendant solely to defeat federal diversity jurisdiction.  Stillwell v. Allstate Ins. Co.,

663 F.3d 1329, 1332 (11th Cir. 2011).

> To establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'

Id. (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)) (alterations omitted).

The burden of establishing fraudulent joinder "is a heavy one."  Id. (internal quotations

omitted).  "[T]he decision as to the sufficiency of the pleadings is for the state courts, and for a

federal court to interpose its judgment would fall short of the scrupulous respect for the

institutional equilibrium between the federal and state judiciaries that our federal system

demands."  Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1284 (11th Cir. 2006).  Thus,

when ruling on a motion to remand for fraudulent joinder, "federal courts are not to weigh the

merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."

Crowe, 113 F.3d at 1538.  In making this determination, "the district court must evaluate the factual

allegations in the light most favorable to the plaintiff and must resolve any uncertainties about

state substantive law in favor of the plaintiff."  Id.  Indeed, "[i]f there is even a possibility that a

state court would find that the complaint states a cause of action against any one of the resident

defendants, the federal court must find that joinder was proper and remand the case to the state

court."  Coker v. Amoco Oil Co., 709 F.2d 1433, 1440–41 (11th Cir. 1983), *superseded by statute*

*on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th

Cir. 1993); see also Stillwell, 663 F.3d at 1334–35 (district court erred in concluding defendant

was fraudulently joined because "at the very least, [it is] possible that a Georgia state court would conclude that" the plaintiff's complaint stated a cause of action).

When addressing a claim of fraudulent joinder, "this Court 'must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.'" McKenzie v. King Am. Finishing, Inc., No. 6:12-cv-065, 2012 WL 5473498, at *3 (S.D. Ga. Nov. 9, 2012) (quoting Stillwell, 663 F.3d at 1334). Unlike the federal pleading standard, Georgia requires notice pleading. See O.C.G.A. § 9–11–8(e). Under this standard, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain. The true test is whether the pleading gives fair notice . . . ." Carley v. Lewis, 472 S.E.2d 109, 110–11 (Ga. Ct. App. 1996). Georgia courts will not dismiss a complaint for a failure to state a claim unless "(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." Anderson v. Flake, 480 S.E.2d 10, 12–13 (Ga. 1997). Georgia courts will construe pleadings "to do substantial justice." McCombs v. S. Reg'l Med. Ctr., Inc., 504 S.E.2d 747, 750 (Ga. Ct. App. 1998). "When considering a motion to dismiss for failure to state a claim, a [Georgia] trial court may consider the complaint, the answer, and any exhibits attached to and incorporated into the complaint and answer." Mark A. Schneider Revocable Tr. v. Hardy, 867 S.E.2d 153, 154 (Ga. Ct. App. 2021).[4]

---

[4] Truist attached exhibits other than the Complaint to its Notice of Removal, including transcripts of depositions of Flake and his criminal defense attorney. (Docs. 1-4, 1-5.) Because a Georgia court would not consider those documents to assess whether Plaintiffs have stated a claim against Flake, the Court will not consider them in ruling on whether Plaintiffs fraudulently joined Flake.

**DISCUSSION**

Truist concedes that Plaintiffs and Flake are citizens of Georgia.  Thus, unless Truist can prove by clear and convincing evidence that Flake was fraudulently joined, the case must be remanded for lack of subject matter jurisdiction because of the lack of complete diversity.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." (emphasis in original)).  Accordingly, the Court must determine whether there is a "possibility that a state court would find that the [Complaints] state[] a cause of action against" Flake.  Coker, 709 F.2d at 1440.

The Complaints do not spell out what claim(s) Plaintiffs assert against Flake.  Plaintiffs do not list separate counts stating their causes of action or underlying legal theories.  (See docs. 1-1, 10.)  But, considering Georgia's liberal notice pleading standards and the deference the Court must afford to Plaintiffs' pleadings, the Court sifted through the Complaints and identified two potential claims: (1) that Flake converted Plaintiffs' money when he wrote checks to himself out of MLG's account, (see doc. 10, p. 2; see also doc. 13, p. 12–13); and (2) that Flake and Hirsch formed and participated in a civil conspiracy to defraud Plaintiffs and MLG's other investors when operating MLG as a Ponzi scheme, (doc. 1-1, p. 5 (Flake "conspired to and did aid in the continuation of the fraudulent scheme in preparing interest checks actually sent to the lenders")).

In its Response to Plaintiffs' Motion to Remand, (doc. 20), Truist has offered compelling arguments against Plaintiffs' conversion claim and against a putative claim that Flake committed fraud individually.  (See id. at pp. 6–13.)  But Truist has not addressed a claim against Flake for civil conspiracy to defraud Plaintiffs.  In fairness to Truist, Plaintiffs' Complaints did not specify that they brought a claim for civil conspiracy.  All the same, applying the state's notice pleading

7

standards, a Georgia court could find that Plaintiffs have asserted an arguable conspiracy to defraud claim against Flake.

Under Georgia law, "[t]o recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." Mustaqeem-Graydon v. SunTrust Bank, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002). "Where several persons conspire to defraud another, one or all of the wrongdoers may be sued, and proof of the conspiracy renders the act of one in deceiving and defrauding the injured party the act of all." Willson v. Appalachian Oak Flooring & Hardware Co., 140 S.E.2d 830, 836 (Ga. 1965). To allege a conspiracy, "[i]t is sufficient to charge that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design. After the conspiracy is formed, if a party joins therein, knowing of its existence and purpose, he becomes as much a party thereto as if he had been an original member." Id.

Plaintiffs have alleged that Flake acted in concert with Hirsch to operate MLG as a Ponzi scheme whose purpose was to induce Plaintiffs and other investors to loan MLG money based on fraudulent representations. Plaintiffs allege that Hirsch's fraudulent statements to Plaintiffs "include[d] but [were] not limited to how Plaintiffs' monies were being used." (Doc. 1-1, p. 3.) According to Plaintiffs, Flake knew that MLG's "transaction history gave the appearance of a Ponzi scheme," Flake knew that MLG's account never contained enough funds to make good on the lenders' loans, and Flake joined the scheme and helped perpetuate it by sending the investors monthly checks. (Id. at pp. 4—5.) Taken together and construed liberally, the Complaints allege that Flake knew that MLG was a scheme to defraud lenders including Plaintiffs, that Flake and Hirsch positively or implicitly agreed on the manner in which they would carry out the scheme,

and that Flake participated in the scheme.[5]  C.f., Rubenstein v. Palatchi, 857 S.E.2d 81, 88 (Ga. Ct. App. 2021) (affirming summary judgment on civil conspiracy claim against some defendants where plaintiff had not "pointed to any evidence that [defendants] knew that [another defendant] had misrepresented [company's] financial situation or agreed to engage in a scheme with him to defraud").

Truist argues that Plaintiffs have not stated a fraud claim against Flake because Plaintiffs did not allege that Flake made any misrepresentation to Plaintiffs, much less a false one.  (Doc. 20, pp. 6—8.)  But these arguments do not thwart Plaintiffs' civil conspiracy to defraud claim. Plaintiffs allege that Hirsch committed fraud by lying to Plaintiffs about MLG's operations and the company's status and that those lies induced Plaintiffs to lend money to MLG and to leave that money with MLG.  See Rubenstein, 857 S.E.2d at 87 (reversing grant of summary judgment to owner and operator of company who misrepresented company's financial position to lenders).  A Georgia court might attribute Hirsch's fraudulent statements to his coconspirator Flake because "proof of the conspiracy renders the act of [Hirsch] in deceiving and defrauding [Plaintiffs] the act of [Flake]."  Willson, 140 S.E.2d at 836.  Moreover, "[o]ne can infer an intent to defraud [lenders] from the mere fact that [Hirsch and Flake were] running a Ponzi scheme."  In re Indep. Clearing House Co., 77 B.R. 843, 860 (D. Utah 1987); see also In re Pac. Forest Prods. Corp., No. 05-

---

[5] The inference that Flake knew about MLG's fraudulent underpinnings is not a stretch given the very nature of a Ponzi scheme and Flake's alleged role within MLG.  Moreover, Flake could be held liable for participating in the conspiracy to defraud even if the scheme did not benefit him.  See Wilson, 140 S.E.2d at 836 (participants to civil conspiracy to defraud could be held liable for conspiracy to defraud even though they were acting for the benefit of the corporation and even if "they did not personally receive the fruits of the transaction").  But here Plaintiffs allege that Flake benefitted from the fraudulent scheme not only thorough his employment with Hirsch but also by continuing the flow of money into MLG's bank account which Flake surreptitiously took money out of.

23268-CIV, 2006 WL 8433477, at *6 (S.D. Fla. May 24, 2006) ("a Ponzi scheme is, by its nature, fraudulent").

To be sure, Plaintiffs' "patchy allegations may ultimately prove insufficient," but the Court's "task is not to gauge the sufficiency of the pleadings." Henderson, 454 F.3d at 1284. Rather, the only question is whether there is a possibility that a Georgia court would find that Plaintiffs have stated a claim against Flake. See id.

Truist also argued that even if Plaintiffs stated a fraud claim against Flake, the claim would be barred by the statute of limitations. (Doc. 20, pp. 9–11.)  Because Truist did not address Plaintiffs' putative civil conspiracy to defraud claim, its timeliness arguments do not meet that claim.  Putting that aside, sometimes "[f]raudulent joinder may be established where the statute of limitations bars a cause of action." Capursi v. Werner-Adamski, No. 8:24-CV-145-MSS-TGW, 2024 WL 4894277, at *4 (M.D. Fla. June 3, 2024).  But a Georgia court may find that Plaintiffs' civil conspiracy claim is timely.  Given that fraud is the gravamen of this claim, a four-year state of limitations applies. Hartley v. Gago, 415 S.E.2d 510, 512 (Ga. Ct. App. 1992).  Additionally, "'[w]here actual fraud is the gravamen of the action the statute of limitation is tolled until the fraud is discovered or by reasonable diligence should have been discovered.'" Falanga v. Kirschner & Venker, P.C., 648 S.E.2d 690, 693 (Ga. Ct. App. 2007) (quoting Shipman v. Horizon Corp., 267 S.E.2d 244, 246 (1980)).  Thus, Plaintiffs' claim would be timely so long as they did not discover or should not have discovered Hirsch and Flake's fraudulent scheme before September 12, 2021, which is four years before Plaintiffs filed this action.

The Complaints indicate that Flake's criminal activities of writing checks to lenders and then depositing them in his own account ended in 2019.  (Doc. 1-1, p. 3; doc. 10, pp. 1, 4.)  But

10

Plaintiffs' allegations do not indicate that MLG's Ponzi scheme ended at that time or that Plaintiffs knew or should have known of Hirsch and Flake's conspiracy to defraud him at that time. To the contrary, Plaintiffs' Complaints assert that the Ponzi scheme operated "uninterrupted until May of 2023" and that Plaintiffs continued to receive payments from MLG until that date. (Doc. 1-1, p. 3.) Plaintiffs also allege that the scheme was concealed, that they continued to lend money to it, and that the scheme was "[u]nbeknownst to Plaintiffs, and undiscoverable to Plaintiffs until approximately 2023." (Id.) Flake may ultimately defeat these allegations through factual arguments. But it is unlikely that a Georgia court would even address those arguments at the motion to dismiss stage. See RES-GA YPL, LLC v. Rowland, 798 S.E.2d 315, 322 (Ga. Ct. App. 2017) (reversing grant of motion to dismiss on statute of limitations and noting that "questions concerning a plaintiff's diligence in discovering an alleged fraud are generally questions for a trier of fact"); see also Mattox v. State Farm Fire & Cas. Co., No. CA 12-0192- KD-C, 2012 WL 3870392, at *17–18 (S.D. Ala. Aug. 15, 2012), *report and recommendation adopted*, 2012 WL 3870495 (S.D. Ala. Sept. 6, 2012) (rejecting fraudulent joinder arguments based on statute of limitations because state court would not address whether plaintiff's fraud claims were timely at motion to dismiss stage). In any event, if this Court decided, when ruling on a motion to remand, a debatable question of whether Georgia citizens complied with Georgia's statute of limitations when suing another Georgia citizen on Georgia claims, the Court would "fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." Henderson, 454 F.3d at 1284 (reversing district court denial of motion to remand where "there exists a sufficiently substantial question as to whether [plaintiff] has successfully pled fraudulent concealment" to toll the statute of limitations).

Truist also points out that Plaintiffs have a "prior and pending lawsuit in the State Court of Chatham County that alleges a fraud claim against Flake based on the same facts as alleged in this case." (Doc. 20, p. 5.)  Truist argues that under Georgia law, this earlier filed lawsuit prevents Plaintiffs from bringing the same claims in this case.  (Id. (citing Steve A. Martin Agency, Inc. v. Planters FIRST Corp., 678 S.E.2d 186, 187 (2009)).)  As an initial matter, Truist has not cited any case where a court has applied Georgia's prior pending action doctrine—or a similar doctrine from another state—to find that a defendant has been fraudulently joined.  It seems that this doctrine of state law should be addressed by a Georgia court and not by a federal court that is only assessing its own jurisdiction.  See, Jerido v. Uber Techs., Inc., No. 22 CIV. 2217 (KPF), 2022 WL 17986179, at *7 (S.D.N.Y. Dec. 29, 2022) (declining to apply prior pending action doctrine when determining whether proposed joinder of non-diverse defendant was fraudulent).  Additionally, whether a Georgia court would apply the state's prior pending action doctrine to bar Plaintiffs' claims against Flake does not appear as straightforward as Truist represents.  The doctrine "can only be applied where the causes of action and the parties are the same." Drs. Hosp. of Augusta, LLC v. Georgia Dep't of Cmty. Health, 811 S.E.2d 64, 65 (Ga. Ct. App. 2018).  Plaintiffs were joined by several other plaintiffs in their prior-filed lawsuit, and they only named Truist and Flake as Defendants in that suit.  (Doc. 1-6.)  In this lawsuit, they are the only plaintiffs, and they named Wells Fargo along with Flake and Truist as defendants.  (Docs. 1-1, 10.)  Additionally, while their allegations in the two lawsuits are similar, they also differ in enough respects that a Georgia court may not apply the prior pending action doctrine.  (Compare, docs. 1-1, 1-6, 10.)

In sum, considering Plaintiffs' allegations through the lens of Georgia's notice pleading standards, there is a "possibility that a [Georgia] court would find that the [Complaints] state[] a cause of action against [Flake]." Coker, 709 F.2d at 1440–41.

**CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiffs' Motion to Remand, (doc. 13). The Court **DIRECTS** the Clerk of Court to **REMAND** this case to the State Court of Chatham County, Georgia, to **TERMINATE** all pending motions, and to **CLOSE** this case.

**SO ORDERED**, this 30th day of April, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA